**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herman E. CANADA, Defendant-
Appellant.**

**No. 71-3356
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 27, 1972.

---

* Rule 18, 5th Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al, 5th Cir. 1970, 431 F.2d 409.

Lazaro Garza-Gongora, Jr., Oscar J. Pena, Laredo, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Edward B. McDonough, Jr., Anthony C. Aguilar, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Herman E. Canada appeals from his conviction pursuant to an indictment charging him with conspiring to smuggle and transport some 181 pounds of marihuana from Mexico into the United States and transporting and concealing said marihuana, all in violation of Title 21 U.S.C.A., Section 176a.[1]

The evidence indicates the following. At about 12:30 a. m. on January 27, 1971, an automobile occupied by Canada and the driver McDaniel and owned by a third party Limones was stopped for a routine border check approximately seven miles north of Laredo, Texas. McDaniel, at the request of the border patrolman, opened the trunk of the vehicle; and four large burlap sacks containing the seized contraband were discovered. Later that same morning, it was determined that Limones, the owner of the vehicle, had reservations for a flight to Dallas, Texas, which was scheduled to leave Laredo at 6:00 a. m. Limones was arrested at the airport. It was noted at the time of his arrest that he was wearing wet and muddy shoes. A personal search of Limones disclosed marihuana sweepings in his shirt and coat pockets, and in his suitcase were discovered a pair of khaki trousers which were wet and muddy to the knee; one pair of wet and muddy socks, and a 50-kilogram scale. The government theorizes that Limones was responsible for smuggling the illicit weed across the river, and Canada and McDaniel were to transport it to its ultimate destination.

■ Canada primarily contends that the evidence was insufficient to support his conviction.[2] The evidence, however, must be viewed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1952); Weaver v. United States, 5th Cir. 1967, 374 F.2d 878. Under this standard, we affirm.

■ It is well-established that proof of mere proximity to contraband is not sufficient to establish actual or constructive possession or knowing transportation and concealment. Bettis v. United States, 9th Cir. 1969, 408 F.2d 563; Montoya v. United States, 5th Cir. 1968, 402 F.2d 847; Williams v. United States, 9th Cir. 1961, 290 F.2d 451;

---

1. The statute provides:
 Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such marihuana after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or whoever conspires to do any of the foregoing acts, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000.
 21 U.S.C.A. § 176a.

2. Canada also complains of the district court's refusal to grant a mistrial after a government witness testified to statements of McDaniel made outside his presence. The record shows that the trial court was careful in distinguishing the evidence admissible against Canada from that which was not; and appropriate instructions in this regard were given to the jury. No reversible error has been shown.

Cipres v. United States, 9th Cir. 1965, 343 F.2d 95; Arellanes v. United States, 9th Cir. 1962, 302 F.2d 603. In none of the above-cited cases, however, was there evidence to prove that the defendant passengers knew of the presence of the contraband in the vehicle. In the instant case, one of the border patrolmen testified as follows:

Q Mr. Canada did not tell you anything in regard to where this marijuana came from?

A Both of them talked—Mr. Canada and Mr. McDaniel stated it was crossed upriver from the port of entry.

THE COURT: Let's get this straight. Did they both tell you that or did you talk to them together?

THE WITNESS: Mr. McDaniel stated that it came from Mexico and was brought in by someone else. I asked him where it had been introduced, and both of the defendants stated that it had been crossed upriver from the port of entry.

THE COURT: Both of them, McDaniel and Canada, made that statement in your presence?

THE WITNESS: Yes.

This testimony tends to indicate that Canada knew of the presence of contraband in the vehicle and, coupled with his relationship to McDaniel, could have led a reasonable jury to find him guilty of the charges beyond a reasonable doubt.

Canada points out that this statement by the government's witness is inconsistent with an earlier statement made on the stand by the same witness. We also recognize that the quoted portion of the record is the only evidence tending to show anything more than Canada's mere proximity to the contraband. We cannot, however, under the dictates of *Glasser* ignore this evidence; and, under the applicable standard of proof, we must affirm.

Affirmed.

* ▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of